FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2024 JAN 11  P 12:02

CAROL L. MICHEL
CLERK

# FELONY

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**INDICTMENT FOR WIRE FRAUD**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | CRIMINAL DOCKET NO. 24-3 |
| v. | * | SECTION: SECT. A MAG. 1 |
| **TODD F. MORRELL** | * | VIOLATION: 18 U.S.C. § 1343 |
| | * | |

\* \* \*

The Grand Jury charges that:

### COUNTS 1 – 12
(18 U.S.C. § 1343 – Wire Fraud)

**A.   AT ALL TIMES MATERIAL HEREIN:**

*Background*

1. The New Orleans Police Department (NOPD) was an agency of the City of New Orleans, a local government/municipality within the State of Louisiana, located in the Eastern District of Louisiana. NOPD was the primary local law enforcement agency for the City of New Orleans.

2. The Special Operations Division (SOD) was a specialized component of NOPD comprised of a series of technical, rapid-response units, including Tactical Platoons and a Bomb

___Fee_____
___Process_____
_X_Dktd_____
___CtRmDep_____
___Doc.No._____

Disposal Unit. SOD was headquartered at 1899 Tchoupitoulas Avenue, New Orleans, Louisiana 70130.

3. NOPD officers, including those on SOD, were paid by the City of New Orleans at regular and overtime hourly rates.

4. NOPD officers, including those on SOD, provided information to NOPD about the length of their on-duty shifts.

5. The information an officer provided was compiled into an electronic biweekly timecard that included, among other things, the date, beginning time, ending time, and duration of all shifts in the given period.

6. Each NOPD officer was required to log into an electronic system at or near the end of the biweekly pay period using a unique identifier and to review and certify the content and accuracy of their timecard.

7. NOPD relied on the contents of certified timecards to determine the amount it paid officers.

8. The City of New Orleans Office of Police Secondary Employment (OPSE) was a governmental entity established in about 2012 to manage and coordinate security-oriented police secondary employment (*i.e.*, "police details") for NOPD officers. OPSE centralized oversight and shifted responsibility for all aspects of police secondary employment away from the individual officers to a city-managed entity.

9. OPSE established a set, tiered payment schedule for time-based police details. It also served as a central entity for receiving payments from customers who hired police details and paying officers for time spent on police details via direct deposit on their regular paycheck.

10. An OPSE coordinator was responsible for interacting with entities paying for police details and setting officers' detail schedules.

11. The New Orleans Fair Grounds Neighborhood Patrol (Fair Grounds Patrol) was created by New Orleans city ordinance to supplement and enhance police service in a specified area around the New Orleans Fair Grounds Race Course, located at 1751 Gentilly Boulevard, New Orleans, Louisiana 70119. The patrol consisted of two patrol cars operating twenty-four hours per day, seven days per week, with one off-duty NOPD officer per patrol car.

12. NOPD officers participating in the Fair Grounds Patrol completed an officer time sheet that included the day, time, and duration of each shift. Thereafter, a representative of the Fair Grounds Patrol transmitted the information from the time sheets to OPSE.

13. OPSE relied on the information provided by the Fair Grounds Patrol to generate payment to officers participating in police details.

14. OPSE transmitted itemized records of an officer's secondary employment and earnings electronically to the officer.

15. NOLA Motorsports Park was a full-service motorsports facility located at 11075 Nicolle Boulevard, Avondale, Louisiana 70094, within Jefferson Parish.

***NOPD Policies***

16. NOPD had certain rules and policies regarding on-duty shifts and off-duty police details, including the following:

> a. NOPD employees were required to report for duty at the time and place required by assignment, to devote their entire shift to duty, and "not engage in activities or personal business which would cause them to neglect or be inattentive to duty." In the event an officer was unable to perform or to begin punctually, the

officer was required to notify the commanding officer or a member of the unit authorized to receive such information before the start of the shift.

b. NOPD employees were prohibited from ceasing to perform their duties before the end of the shift unless they received prior approval from their supervisor.

c. NOPD officers who were authorized to work police details were only permitted to do so while off duty from NOPD. Officers were prohibited from working a police detail that would interrupt or occur during their assigned on-duty shift.

d. NOPD officers were required to ensure that their timecards and time sheets accurately reflected their actual work hours.

***Defendant Todd F. Morrell***

17. **TODD F. MORRELL (MORRELL)** was an adult resident of Orleans Parish.

18. **MORRELL** was an officer with NOPD between on or about October 1989 and November 30, 2021. In about 2001, **MORRELL** was promoted to the rank of Sergeant.

19. **MORRELL** was a member of the NOPD SOD and served on a Tactical Platoon and the Bomb Disposal Unit.

20. **MORRELL** supplemented his income from NOPD by working various police details, including with the Fair Grounds Patrol.

21. Between at least 2016 and 2021, **MORRELL** signed annual certifications related to his understanding of NOPD policies concerning secondary employment, which included acknowledgements that stated, "I will actively monitor my hours[.]"

22. **MORRELL** maintained an account at Capital One Bank, N.A. (Capital One) bearing account number x6275. **MORRELL** received payments from his work with NOPD and police details via direct deposit into the Capital One account bearing account number x6275.

23.     **MORRELL** certified and submitted timecards and time sheets reflecting that he worked every day between March 26, 2017, and July 23, 2017, except one day (May 27, 2017). **MORRELL** claimed to have worked between thirteen (13) and twenty and one-half (20.5) hours per day on over thirty (30) of those days.

24.     **MORRELL** certified and submitted timecards and time sheets in calendar year 2020 reflecting that he worked approximately 356 days of the calendar year—every day except January 1-4, August 27, September 5, November 25, December 23, and December 30.

25.     In total, **MORRELL** certified and submitted timecards and time sheets reflecting that he worked more than the following cumulative number of hours per calendar year:

   a. 2017: 3,800 hours

   b. 2018: 4,100 hours

   c. 2019: 4,400 hours

   d. 2020: 4,600 hours

   e. January 1, 2021 through November 5, 2021: 3,600 hours

26.     In Fall 2021, including on or about November 16, 2021, local New Orleans media outlets published and broadcast reports regarding **MORRELL's** employment with NOPD and the Fair Grounds Patrol.

27.     On or about November 17, 2021, **MORRELL** submitted to NOPD payroll adjustment forms for several dates between December 2017 and April 2021 seeking to correct "clerical errors" that **MORRELL** claimed misstated the hours he had been on duty for NOPD.

28.     On or about November 30, 2021, **MORRELL** retired from NOPD and ceased working for the Fair Grounds Patrol.

B.    **THE SCHEME AND ARTIFICE TO DEFRAUD:**

Beginning at a time unknown, but not later than in about January 2017, and continuing through on or about November 30, 2021, in the Eastern District of Louisiana and elsewhere, **TODD F. MORRELL** did knowingly devise and intend to devise a scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations, and promises, namely, submitting false time sheets and timecards to NOPD and entities for which he claimed to provide police details, including the Fair Grounds Patrol and thereafter receiving unearned and excessive payments as a result of his submissions.

C.    **MANNER AND MEANS:**

It was part of the scheme and artifice to defraud that on numerous occasions **MORRELL** submitted and certified timecards to NOPD falsely claiming to have been on duty for NOPD during periods when **MORRELL** was not present for duty.

It was further part of the scheme and artifice to defraud that on numerous occasions **MORRELL** completed and submitted time sheets to the Fair Grounds Patrol falsely claiming to have worked the Fair Grounds Patrol detail during periods when **MORRELL** was not present for and did not work at the detail.

It was further part of the scheme and artifice to defraud that **MORRELL** submitted and certified timecards to NOPD for periods he falsely claimed to have worked when, in fact, **MORRELL** was engaged in recreational activities unrelated to his work duties, including by observing and participating in recreational race car driving at locations around New Orleans and throughout the southern United States.

It was further part of the scheme and artifice to defraud that **MORRELL** completed and submitted time sheets to the Fair Grounds Patrol for periods he falsely claimed to have worked

when, in fact, **MORRELL** was engaged in recreational activities unrelated to his work duties, including by observing and participating in recreational race car driving at locations around New Orleans and throughout the southern United States.

It was further part of the scheme and artifice to defraud that on numerous occasions **MORRELL** "double billed" NOPD and the Fair Grounds Patrol (*i.e.*, submitted time sheets to both entities reflecting that he worked for both entities during the same or overlapping time periods and seeking payment from each entity for that period).

It was further part of the scheme and artifice to defraud that **MORRELL** certified and submitted timecards to NOPD and time sheets to entities for whom he claimed to have provided police details reflecting that he worked an implausible amount of time.

It was further part of the scheme and artifice to defraud that, after **MORRELL** learned that local news media outlets were investigating his inappropriate submission of false and fraudulent time sheets, **MORRELL** contacted a representative of the Fair Grounds Patrol and asked the representative to advise OPSE that **MORRELL** did not work one or more shifts investigated by the media and referenced in its reporting.

It was further part of the scheme and artifice to defraud that, after local news media reported **MORRELL's** inappropriate submission of false and fraudulent time sheets, **MORRELL** attempted to adjust his prior timecards by falsely claiming that the double billing was the result of "clerical errors."

D.   **THE OFFENSE:**

On or about the dates listed below, in the Eastern District of Louisiana and elsewhere, **TODD F. MORRELL**, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and to obtain money, funds and property by means of false and

fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted in interstate commerce certain writings, signs, signals and sounds by means of wire communications, namely causing electronic fund transfers into a bank account under **MORRELL's** control that included the following amounts as a result of false and fraudulent timecards and time sheets he caused to be submitted to NOPD and the Fair Grounds Patrol:

| Count | Payment Date | Description |
|---|---|---|
| 1 | 6/14/2019 | **MORRELL** received payment via electronic direct deposit into Capital One Account No. x6275 that included approximately $435.19 for claiming to be on duty with NOPD on or about May 26, 2019, while racing at NOLA Motorsports Park |
| 2 | 7/26/2019 | **MORRELL** received payment via electronic direct deposit into Capital One Account No. x6275 that included approximately $146.65 for claiming to work a Fair Grounds Patrol detail on or about July 1, 2019, during a period he also claimed to be on duty with NOPD (*i.e.*, double billing) |
| 3 | 1/10/2020 | **MORRELL** received payment via electronic direct deposit into Capital One Account No. x6275 that included approximately $192.60 for claiming to work a Fair Grounds Patrol detail on or about December 18, 2019, during a period he also claimed to be on duty with NOPD (*i.e.*, double billing) |
| 4 | 7/10/2020 | **MORRELL** received payment via electronic direct deposit into Capital One Account No. x6275 that included approximately $415.98 for claiming to be on duty with NOPD on or about June 21, 2020, while racing at NOLA Motorsports Park |
| 5 | 1/8/2021 | **MORRELL** received payment via electronic direct deposit into Capital One Account No. x6275 that included approximately $192.60 for claiming to work a Fair Grounds Patrol detail on or about December 21, 2020, during a period he also claimed to be on duty with NOPD (*i.e.*, double billing) |
| 6 | 2/5/2021 | **MORRELL** received payment via electronic direct deposit into Capital One Account No. x6275 that included approximately $429.00 for claiming to work a Fair Grounds Patrol detail on or about January 23, 2021, while racing at NOLA Motorsports Park |

| 7 | 4/1/2021 | **MORRELL** received payment via electronic direct deposit into Capital One Account No. x6275 that included:<br>• approximately $225.00 for claiming to work a Fair Grounds Patrol detail while racing at NOLA Motorsports Park on or about March 13, 2021, and<br>• approximately $415.98 for claiming to be on duty with NOPD while racing at NOLA Motorsports Park on or about March 14, 2021 |
|---|---|---|
| 8 | 4/14/2021 | **MORRELL** received payment via electronic direct deposit into Capital One Account No. x6275 that included approximately $256.80 for claiming to work a Fair Grounds Patrol detail on or about March 29, 2021, that **MORRELL** did not work |
| 9 | 5/12/2021 | **MORRELL** received payment via electronic direct deposit into Capital One Account No. x6275 that included:<br>• approximately $312.30 for claiming to be on duty with NOPD while racing in Austin, Texas on or about April 25, 2021,<br>• approximately $160.50 for claiming to work a Fair Grounds Patrol detail on or about April 26, 2021, that **MORRELL** did not work, and<br>• approximately $187.50 for claiming to work a Fair Grounds Patrol detail on or about April 30, 2021, that **MORRELL** did not work |
| 10 | 6/23/2021 | **MORRELL** received payment via electronic direct deposit into Capital One Account No. x6275 that included approximately $415.98 for claiming to be on duty with NOPD on or about June 6, 2021, while racing at NOLA Motorsports Park |
| 11 | 10/27/2021 | **MORRELL** received payment via electronic direct deposit into Capital One Account No. x6275 that included:<br>• approximately $248.49 for claiming to work a Fair Grounds Patrol detail on or about October 4, 2021, that **MORRELL** did not work, and<br>• approximately $192.60 for claiming to work a Fair Grounds Patrol detail on or about October 11, 2021, during a period he also claimed to be on duty with NOPD (*i.e.*, double billing) |
| 12 | 11/10/2021 | **MORRELL** received payment via electronic direct deposit into Capital One Account No. x6275 that included approximately $429.00 for claiming to work a Fair Grounds Patrol detail on or about October 23, 2021, that **MORRELL** did not work |

All in violation of Title 18, United States Code, Section 1343.

## **NOTICE OF FORFEITURE**

1.     The allegations of Counts 1 through 12 of this Indictment are incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2.     As a result of the offenses alleged in Counts 1 through 12, the defendant, **TODD F. MORRELL**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to said offenses.

3.     If any of the above-described property, as a result of any act or omission of the defendant:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third person;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be subdivided without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code, Section 853(p), forfeiture of any other property of the defendant up to the value of said property.

A TRUE BILL:

DUANE A. EVANS
UNITED STATES ATTORNEY

JORDAN GINSBERG
Assistant United States Attorney
Illinois Bar No. 6282956

New Orleans, Louisiana
January 11, 2024

FORM OBD-34

No. _____

# UNITED STATES DISTRICT COURT

Eastern District of Louisiana

Criminal Division

## THE UNITED STATES OF AMERICA

vs.

## TODD F. MORRELL

### INDICTMENT FOR WIRE FRAUD

**VIOLATION:** 18 U.S.C. § 1343

_A true bill_

_____

Filed in open court this _____ day of _____ A.D. 2024.

_____
_Clerk_

Bail, $ _____

_____
JORDAN S. GINSBERG
Assistant United States Attorney